UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL J. P.,[1]

                                                    Plaintiff,                    DECISION AND ORDER

-vs-                                                                                   20-CV-1595 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant.

_____

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's

application for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule

of Civil Procedure 12(c). Pl.'s Mot., Aug. 3, 2021, ECF No. 10; Def.'s Mot., Jan. 3, 2022,

ECF No. 11. Plaintiff presents a single issue for the Court's review: whether the

Administrative Law Judge ("ALJ") erred in his review of Plaintiff's mental limitations. Pl.

Mem. of Law, Aug. 3, 2021, ECF No. 10-1. The Commissioner maintains that the ALJ did

not commit error, and that his decision was supported by substantial evidence. Def. Mem.

of Law, Jan. 3, 2022, ECF No. 11-1. For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings [ECF No. 10] is denied, and the Commissioner's motion [ECF

No. 11] is granted. The Clerk of Court is directed to close the case.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff's Applications

Plaintiff protectively filed his DIB and SSI applications in September 2017, alleging a disability onset date of July 1, 2010. Transcript ("Tr."), 173, May 4, 2021, ECF No. 8. Plaintiff alleged that his ability to work was limited by several impairments, including: sciatica, chronic anxiety and depression disorder, hypothyroidism, ulcerative colitis, sleep apnea, arthritis, migraines, temporary amnesia, memory fog, and hypertension. Tr. 190. In January 2018, the Commissioner determined that Plaintiff was not disabled, and did not qualify for DIB or SSI benefits. Tr. 97–102. Thereafter, Plaintiff requested a hearing before an ALJ. Tr. 109.

The Hearing before the ALJ

Plaintiff's request was approved, and Plaintiff appeared with counsel for a hearing before the ALJ via videoconference in October 2019, and an impartial vocational expert also joined by phone. Tr. 33. At the hearing, Plaintiff's counsel made an opening statement:

> [Plaintiff] was 39 years and eight months old on his alleged onset date of April 5th of 2016. He's got past relevant work as a contractor, taxi driver, and a detailer . . . . He's got a high school education . . . He's got the [date last insured] of 3/31/17. And this is a claim that's got both a mental and a physical component. It's based on severe impairments, including chronic anxiety and depression, hypothyroidism, urologic issues . . . . The claimant has sleep apnea. And a low back injury with sciatica, and arthritis and there are also several provisions that may be considered non-severe insofar as there's just not a whole lot of records on them in the file at this time. But that

2

would include migraines, some remote issues, including temporary amnesia and some cognitive issues, hypertension, suspected Barrett's Esophagus, and ulcerative colitis as well as obesity and as I mentioned the claimant is scheduled for a surgery on November 5th to in part address that issue because he's had some difficulty maintaining and keeping off the weight and per the claimant who's been adding about 12 pounds per year for some time now. And . . . a lot of this goes back to a hospitalization in the early '90s in Syracuse, New York, where I believe the claimant was assaulted with a baseball bat, which caused the [traumatic brain injury]. I was unable to really obtain, it was so long ago, obviously I was unable really to obtain any records from that incident, but I think a lot of what's going on today can be related back to that incident . . . . I think by and large, the case [ ]skews towards it being a mental health case more so than the physical issues are, and I believe that's what's preventing him from being able to do any work at the SGA level . . . .

Tr. 37–39.

For his part, Plaintiff testified that he lives by himself in a single wide mobile home paid for by one of his parents. Tr. 39. He was on food stamps for a few years, but is now entirely supported by his family. Tr. 40. He has a general equivalency diploma (Tr. 40), is able to drive a vehicle (Tr. 40), can make small repairs to his mobile home (Tr. 50), prepares his own meals (Tr. 51, 52), does his own laundry (Tr. 51), watches cable news and videos about aviation (Tr. 51), goes to the grocery store a couple of times a week (Tr. 52), visits his mother once a week (Tr. 52), and emails friends in Europe (Tr. 63). On the other hand, Plaintiff also testified that he experiences severe depression (Tr. 43), has difficulty adjusting (Tr. 44), has problems with his anger (Tr. 44), and has problems getting along with people in a work environment (Tr. 44). He cannot stand and walk for extended periods (Tr. 44), has episodes of sciatica once every three to six months (Tr. 44–45), and has experienced heavy weight gain for what he attributes to his hypothyroidism (Tr. 44–47).

With respect to work history, Plaintiff testified that his last position was in 2012 when he worked part-time as a limousine driver and full-time as an hourly delivery cab driver for his cousin's transportation company. Tr. 40–41. Prior to that, he worked as a part-time delivery driver for prescription medications to nursing home and managed care facilities, and as a driver delivering steel oxygen tanks. Tr. 42–43. Plaintiff stated that he hasn't been able to work since 2012 "partly because of my severe depression, my weight gain. I had to relocate to three different homes in the past two years . . . . [D]ue to that relocation, it was very hard for me to adjust." Tr. 44.

The ALJ's Decision

On December 5, 2019, the ALJ denied Plaintiff's respective claims for DIB and SSI benefits. Tr. 23. In his decision, the ALJ found that Plaintiff met the special insured status requirements for DIB benefits through December 31, 2015. Tr. 18. At step one of the Commissioner's "five-step, sequential evaluation process,"[2] the ALJ found that Plaintiff

---

[2] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB benefits. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130. In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

has not engaged in substantial gainful activity since his amended alleged onset date of April 5, 2016. Tr. 12. At step two, the ALJ determined that Plaintiff has several severe impairments: degenerative disc disease, lumbar spine; depressive disorder; adjustment disorder with anxiety; and obesity. Tr. 12. The ALJ also noted that there was objective evidence in the medical record of hypertension, hypothyroidism, and obstructive sleep apnea, which the ALJ found to be non-severe. Tr. 13.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13. In particular, the ALJ found that Plaintiff's degenerative disc disease did not meet or equal listing 1.04 for spine disorders, and that although his obesity was considered severe, the signs, symptoms, and laboratory findings of the obesity are not of such severity as found in any listing. Tr. 14. In addition, the ALJ found that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 for depressive disorders or 12.06 for anxiety-related disorders. Tr. 14. To make this finding, the ALJ performed the "special technique" required under 20 C.F.R. § 404.1520a for all mental impairments.[3] He found

---

[3] When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a). First, the ALJ must evaluate the claimant using "Paragraph A" criteria to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1, § 12.00"). *See* 20 C.F.R. § 404.1520a(b)(1). If the claimant does have such an impairment, the ALJ must assess the claimant's limitations in four broad areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (collectively, the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3).

The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). To satisfy the "Paragraph B" criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria. App'x 1, § 12.00F(2). After rating the degree of functional limitation

that Plaintiff had a mild limitation in understanding, remembering or applying information; and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. Tr. 14–15.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[4] ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following limitations:

> [Plaintiff can] occasionally stoop, kneel, crouch, or crawl. He can interact occasionally with coworkers and members of the general public, but should generally work on tasks alone. Finally, the claimant may not perform fast-paced or strictly time-limited tasks.

Tr. 15.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a taxi driver and a truck driver. Tr. 21. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the impartial VE, the ALJ found that Plaintiff would be able to perform such jobs in the national economy as a merchandise marker, routing clerk, and housekeeping cleaner. Tr. 22. Hence, the ALJ concluded that Plaintiff *is not* disabled. Tr. 23.

On September 10, 2020, the Commissioner's Appeals Council denied Plaintiff's request to review the ALJ's decision. The ALJ's decision thus became the "final decision" of the Commissioner.

---

resulting from the claimant's mental impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d).

[4] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to disability insurance benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.'" 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25,

7

27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation and quotation marks omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

## DISCUSSION

In the present case, Plaintiff makes two arguments in support of his broader contention that the ALJ's RFC was not supported by substantial evidence. First, Plaintiff notes that the ALJ found consultative psychological examiner, Dr. Janine Ippolito's opinion "somewhat persuasive," but did not include in his RFC a specific limitation reflecting her opinion that Plaintiff has moderate limitations regulating emotions, controlling behavior, and maintaining well-being. Pl. Mem. of Law at 10–15 (discussing Tr. 390). Plaintiff maintains that the ALJ was required either to incorporate the specific limitation, or adequately explain why he declined to do so. *Id.*

Second, Plaintiff notes the ALJ's finding in his discussion of the "special technique" for mental impairments that Plaintiff has a moderate limitation interacting with others, and argues that it was error for the ALJ to include a limitation in the RFC limiting only Plaintiff's interaction with coworkers and the general public. Pl. Mem. of Law at 15–17. Relying in part on this Court's decision in *Goosby v. Saul*, No. 18-CV-207-CJS, 2019 WL 4072660, at *4 (W.D.N.Y. Aug. 29, 2019), Plaintiff maintains that the ALJ was also required to either include a limitation regarding Plaintiff's interaction with supervisors or adequately explain why such a limitation was omitted. *Id.*

Relevant Legal Principles

With respect to the specific findings at issue in this case, the Court notes two significant elements of the RFC determination. First, the claimant bears the burden of proving a restrictive RFC. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (citing, *inter alia*, 42 U.S.C. § 423(d)(5)). *See also* 20 C.F.R. § 416.945(a)(3). Second, the ALJ bears the final responsibility for determining a claimant's RFC. § 404.1546(c), § 416.946(c). The regulations require the ALJ to make the RFC determination "based on all the relevant evidence in [the claimant's] case record," including not only medical evidence and medical source statements, but also "descriptions and observations of [the claimant's] limitations . . . provided by [the claimant], [or the claimant's] family, neighbors, friends, or other persons." § 404.1545(a)(1) and (a)(3), § 416.945(a)(1) and (a)(3).

In assessing a claimant's mental abilities, the ALJ must "first assess the nature and extent of [a claimant's] mental limitations and restrictions and then determine [his] residual functional capacity for work activity on a regular and continuing basis." § 404.1545(c), § 416.945(c). Further, the ALJ must be cognizant that "[a] limited ability to

carry out certain mental activities, such as limitations . . . in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [the claimant's] ability to do past work and other work." § 404.1545(c), § 416.945(c).

"[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence*." Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (reiterating a point made summarily in *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). Nevertheless, the ALJ must set forth the crucial factors in any determination with "sufficient specificity" to enable the reviewing court to decide whether the determination is supported by substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983)).

<u>The ALJ's RFC Finding regarding Plaintiff's Ability to Regulate his Emotions</u>

Plaintiff's suggestion that the ALJ's decision did not adequately explain his treatment of consultative psychological examiner Dr. Jannine Ippolito's medical opinion is without merit. *See* Pl. Mem. of Law at 13–14. In fact, the ALJ referenced Dr. Ippolito's exam findings at several points throughout his decision, and sufficiently explained both the basis for his assessment of Dr. Ippolito's opnion and how Plaintiff's mental impairments were incorporated into the RFC determination. *See e.g.,* Tr. 14 (discussing Dr. Ippolitio's findings while employing the "special technique" for mental impairments).

With respect to Dr. Ippolito's opinion, the ALJ noted in his review of the evidence that Plaintiff reported symptoms of both depression and anxiety at his consultative psychological exam with Dr. Ippolito in November 2017 (Tr. 18), and that she diagnosed recurrent, moderate major depressive disorder, and adjustment disorder with anxiety (Tr.

19). Then, in assessing her "somewhat persuasive" opinion, the ALJ noted Dr. Ippolito's finding that Plaintiff "could regulate emotions, control behavior, and maintain well-being with moderation limitations," but indicated that Plaintiff's "long history of psychological issues" paired with additional "corroborating evidence" from treatment notes from a different provider nearly two years after his consultative exam, "make other limitations appropriate." Tr. 20 (citing Plaintiff's evaluation by Licensed Mental Health Counselor Chelsea Plescia at Horizon Health in June 2019, Tr. 544–76). That is, the ALJ found that Dr. Ippolito's opinion was supported by her own examination, but not consistent with the record as a whole when considering Plaintiff's subsequent treatment and evaluation.

Moreover, the ALJ sufficiently explained the basis for the limitations for mental impairments in the RFC. First, in evaluating the medical evidence in the record, the ALJ acknowledged that there is only a "limited body of medical evidence showing . . . mental limitations," but that the evidence "sufficiently documents a history of mental issues since the claimant's youth . . . ." Tr. 19. For instance, the ALJ points out that the psychiatric portions of Plaintiff's physical examinations were "unremarkable," and that he has reported no major problems, yet also discusses evidence of a treatment history for depression spanning from 2011 until the close of the record in 2019. Tr. 18–19. Based on this evidence, as well as Plaintiff's hearing testimony and opinion evidence from Dr. Ippolito, the ALJ found that Plaintiff's "depression and adjustment disorder, with anxiety, precludes fast-paced work and limits his capacity for interaction with others in the work environment." Tr. 21. In short, the ALJ's explanation was sufficient for this Court to evaluate the basis of his determination and conclude that it was based on substantial evidence.

<u>The ALJ's RFC Finding Regarding Plaintiff's Capacity to Interact with Others</u>

Plaintiff's challenge to the ALJ's RFC has two further prongs. First, Plaintiff suggests that it was error for the ALJ to consider only Plaintiff's ability to interact with coworkers and the general public without considering his ability to interact with supervisors. Pl. Mem. of Law at 15–16. Second, Plaintiff maintains that the ALJ's RFC limitation was not supported by substantial evidence because it was based only on "a generalization about Plaintiff's abilities" espoused during the hearing. Pl. Mem. of Law at 16–17.

In support of his argument that the ALJ erred by failing to consider Plaintiff's ability to interact with supervisors, Plaintiff relies on this Court's 2019 decision in *Goosby v. Saul* to reverse the Commissioner's decision denying benefits on claims involving mental impairments. *Goosby*, however, is not germane to the present case because it addresses an ALJ's attempts to "use[ ] Plaintiff's ability to relate socially with neighbors, family, and friends as a basis for reinterpreting the medical source opinions about her ability to relate to coworkers, supervisors, and the public" to craft a *less restrictive* RFC. *Goosby*, 2019 WL 4072660, at *4. Here, on the other hand, as in *Ramsey v. Commissioner of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020), the ALJ deviated occasionally from medical opinion evidence to craft a *more restrictive* RFC than the RFC indicated in the opinions Dr. Ippolito (Tr. 390, finding Plaintiff was able to "interact adequately") and M. Marks, Ph.D. (Tr. 75, finding Plaintiff has "mild" limitations interacting with others). Whereas Plaintiff in *Goosby* was prejudiced by the ALJ's less restrictive RFC, Plaintiff in the present case could not have been prejudiced by the ALJ's more restrictive RFC than that proposed by his medical

sources.

Moreover, the ALJ's conclusion was not supported by a "generalization of Plaintiff's abilities," but by substantial evidence. The evidence included Plaintiff's repeated testimony at his hearing that he didn't believe he could work due to "problems with other coworkers" (Tr. 44, 48, 61, 62), his 2019 evaluation by Horizon Health in which he testified he couldn't work because he doesn't "get along with people" (Tr. 570), and a history of mood-regulating medication prescribed by his primary care provider (Tr. 18, citing 273–309). Given the supporting evidence, the ALJ committed no error by determining the scope of Plaintiff's RFC "because that is his responsibility." *Ramsey*, 830 F. App'x at 39 (citing 20 C.F.R. § 404.1527(d)(2)).

Lastly, Plaintiff rightly notes that coworkers, the public and supervisors are three distinct groups, and that limits interacting with two of these groups does not account for limitations on the third. Pl. Mem. of Law at 16 (citing *Smith v. Colvin*, No. 1:16-CV-00295 (MAT), 2017 WL 489701, at *3 (W.D.N.Y. Feb. 7, 2017); *Nickens v. Colvin*, No. 14-140, 2014 WL 4792197, at *2 (W.D. Pa. Sept. 23, 2014)). However, the Court finds no merit in Plaintiff's contention that the ALJ's failure to include a limitation dealing with supervisors in Plaintiff's RFC was error. There is only a single instance in the record in which Plaintiff references an issue with supervisors, and that issue concerned the pace of his work rather than an unwillingness to be supervised. Tr. 62 (discussing issues he had at one employer in which coworkers were angered because they were paid on commission and he was working too slowly). It is Plaintiff's burden, not the ALJ's, to prove a more restrictive RFC. *Smith*, 740 F. App'x at 726.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 10] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 11] is granted. The Clerk is directed to close this case.

DATED:      September 20, 2022
            Rochester, New York


CHARLES J. SIRAGUSA
United States District Judge

14